**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | Subchapter V |
| JET-SPEED LOGISTICS (USA), LLC, | ) | |
| | ) | Case No. 26-14029 |
| Debtor. | ) | |
| | ) | Hon. Timothy A. Barnes |
| | ) | |

**DECLARATION OF THOMAS PARISH IN SUPPORT OF CHAPTER 11 CASE AND FIRST DAY MOTIONS**

I, Thomas (TJ) Parish, hereby declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge information and belief:

1. I am the President of Jet-Speed Logistics (USA), LLC ("Jet-Speed" or the "Debtor"), an Illinois limited liability company whose principal address is in Naperville, Illinois. I joined Jet-Speed in 2004 in the role of Regional Sales Manager, I have served as President of Jet-Speed since 2024, and I am personally familiar with the Debtor's operations, day-to-day business, affairs, and books and records.

2. I submit this Declaration in support of the Debtor's Chapter 11 case and the relief sought in the various first day motions filed contemporaneously with this Declaration. Except as otherwise noted, all facts set forth in this Declaration are based on my personal knowledge, my discussions with other employees of the Debtor, my review of relevant documents or my opinion, based on my experience, and knowledge of the Debtor's operations and financial condition. In making this Declaration, I have relied, in part, on information and materials gathered, prepared, and provided to me from the Debtor's employees kept in the ordinary course of the Debtor's operations.

3. On August 25, 2026 (the "Petition Date"), the Debtor filed a voluntary petition for relief under Subchapter V of Chapter 11 of Title 11, United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the Northern District of Illinois – Eastern Division (the "Bankruptcy Court"), commencing the above-captioned bankruptcy case (the "Bankruptcy Case"). No committee or examiner has been appointed in the Bankruptcy Case.

**I. Background and History of Jet-Speed**

4. Jet-Speed is a third-party logistics and transportation management company that commenced operations in May 2002, in Chicago, Illinois. Since its founding more than two decades ago, Jet-Speed has focused on providing customized freight forwarding, customs brokerage, and supply chain management solutions to commercial customers in a variety of industries across the globe. Jet-Speed's business model has historically emphasized tailoring logistics and transportation services to the specific requirements of each customer, allowing it to develop and maintain long-standing customer relationships dating back to the early years of its operations.

5. The Debtor is affiliated with Jet-Speed Air Cargo Forwarders (Hong Kong) Limited ("Jet-Speed HK"), a Hong Kong private company limited by shares that was established in 1967. Jet-Speed HK is a Managing Member of the Debtor and holds a fifty-one percent (51%) membership interest in the Debtor. Jet-Speed was formed in 2002 and has historically worked together with Jet-Speed HK to coordinate the international movement of customer cargo from Hong Kong and China. Throughout their relationship, the Debtor and Jet-Speed HK supported their respective operations through intercompany transactions, with amounts becoming owed between the entities at different times.

6. The Debtor's day-to-day operations are led by its officers. I serve as President of the Debtor, having joined the Debtor in 2004, and Mark Phillips is a former President. The Debtor's other officers include Lisa Marie Nelson, Vice President of Brokerage; Casey Huebch, Vice President of Operations; and Jodi Zigler, Director of Pricing and Network. In the period leading up to the Petition Date, the Managing Members of the Debtor authorized the commencement of this Bankruptcy Case and designated Mr. Parish as the Debtor's authorized representative with respect to the Bankruptcy Case and related bankruptcy matters, with authority to act in the name and on behalf of the Debtor in connection with these proceedings.

7. As of the Petition Date, the Debtor employs thirteen (13) individuals, including its officers and directors (collectively, the "Employees"). In addition to its Employees, the Debtor engages four (4) independent contractors: two of whom are in the Philippines and provide pricing services to the Debtor, one who is in Columbia and provides operational services, and a sales representative based in New Year (the "Sales Contractor"). As set forth more fully below, the Debtor seeks authority in these first day motions to pay certain prepetition obligations owed to its Employees and the pricing and operations contractors. The Debtor does not seek similar relief with respect to its Sales Contractor at this time, and anticipates addressing any prepetition obligations owed to him, as appropriate, in a subsequent motion.

8. Over time, Jet-Speed expanded beyond its original transportation operations to provide a broader suite of supply chain services, including truckload transportation, less-than-truckload ("LTL") transportation, expedited delivery services, distribution, and logistics management. Jet-Speed's growth was historically driven by its ability to serve as a single-source logistics provider capable of coordinating transportation, inventory management, and fulfillment functions for its customers.

## II. Overview of Operations

9. Jet-Speed provides a diversified range of logistics and transportation services designed to support customers' supply chain and delivery requirements. Its transportation offerings include truckload and LTL transportation, partial and full truckload shipments, expedited freight services, air freight transportation, and related logistics coordination. Jet-Speed markets itself as a solution-driven provider capable of customizing transportation arrangements based on the timing, handling, and delivery specifications of individual customers.

10. In addition to transportation services, Jet-Speed operates warehousing and fulfillment operations that support inventory storage, order processing, distribution, and related supply chain management functions. Jet-Speed utilizes warehouse management technology designed to integrate with customer systems and employs personnel responsible for managing inventory control, order fulfillment, and distribution activities. The warehousing segment is intended to provide customers with an integrated logistics platform combining transportation and inventory management services. Yet, Jet-Speed does not own or lease any warehouse space and, instead, relies on third-party companies integrated into Jet-Speed's warehouse technology systems.

11. As of the Petition Date, Jet-Speed's operations center on providing integrated transportation, fulfillment, and logistics management solutions that enable customers to move products efficiently through their supply chains. Jet-Speed's ability to coordinate transportation assets, warehouse operations, and specialized delivery services has historically formed the foundation of its business and customer relationships.

## III. Circumstances Leading to Chapter 11 Filing

12. In the period preceding the Petition Date, recent increases in tariffs on imported goods increased the overall cost of international trade for the Debtor's customers and negatively affected demand for the Debtor's customs brokerage and related services. Higher tariffs caused certain customers to reduce, delay, or reconsider their imports, resulting in lower import volumes moving through the Debtor. As customers became more sensitive to the rising costs of importing goods, the reduced volume placed further pressure on the Debtor's margins, which were already narrow on certain segments of its business. The cumulative effect of these conditions was a reduction in the Debtor's overall business and a corresponding decline in the margins available to the Debtor.

13. The financial pressures described above also affected the Debtor's relationship with Jet-Speed HK. Because the parties' intercompany obligations ran in both directions, the amounts owing between the Debtor and Jet-Speed HK have historically been subject to setoff, and such setoff of mutual intercompany obligations has remained a feature of the parties' relationship through the present. Whereas Jet-Speed HK previously carried intercompany balances owing to the Debtor, more recently the intercompany position has shifted, such that the Debtor is currently the party with a net amount owing to Jet-Speed HK. The strain on the Debtor's business, together with the evolving intercompany position between the affiliates, has contributed to the circumstances leading to the commencement of this Bankruptcy Case.

14. Among the Debtor's creditors, one of its most significant trade relationships is with Econocaribe Consolidators, Inc. & ECU Worldwide (collectively, "ECU"), which accounts for a substantial portion of the Debtor's outstanding trade payables. ECU has commenced litigation against the Debtor asserting claims for breach of contract and unjust enrichment, seeking damages

of approximately $435,000.00. The claims arise from services ECU asserts it provided to the Debtor for which ECU contends it was not paid.

15. The Debtor has also been named in litigation brought by SIG Packaging LLC ("SIG") arising from the nonpayment of customs duties on behalf of SIG. The applicable duty amounts were drawn against the Debtor's bank account at a time when it held insufficient funds to cover them, leaving SIG in the position of having to pay those duties a second time, once initially to the Debtor and again to customs after the issue arose. The SIG dispute reflects the disruption that can result when the Debtor cannot timely satisfy customs duties or maintain uninterrupted use of its bank account, circumstances that certain of the Debtor's first day motions are intended to prevent from recurring.

16. Prior to the Petition Date, Jet-Speed had already taken steps to streamline operations and cut costs. These steps have included the reduction of workforce and release of at least one independent contractor. Additional cost-cutting measures will be taken during the Bankruptcy Case while the Debtor can focus on reinforcing its long-standing relationships with customers and building new ones.

**IV. First Day and Subsequent Relief Requested**

17. The Debtor filed this Bankruptcy Case for the breathing room necessary to propose a Subchapter V plan of reorganization to distribute the Debtor's disposable income to general unsecured creditors over a five-year period, including the debts owed to ECU and SIG. I have prepared this Declaration to provide the Court the insight into this Bankruptcy Case and detail the imminent relief to be sought to keep the Debtor fully operational and maximize the value for creditors. I believe the relief requested in each of the first day motions described below is necessary

and appropriate and is in the best interests of the Debtor's estate, its creditors, and all other parties in interest.

**A.** ***Motion to Pay Prepetition Wages, Benefits, and Insurance***

18. The Debtor is filing a motion seeking authority, but not direction, to pay certain accrued prepetition wages, salaries, and other compensation owed to its Employees and pricing and sales contractors, to continue the Employees' health insurance and 401(k) benefit plans in the ordinary course, and to pay the ordinary course fee of its third-party accountant and payroll processor. Payment of the payroll and accounting fee is a prerequisite to processing each payroll run. The Debtor is also seeking payment for the prepetition services provided from the sales and operations contractors, plus the final payment of a former contractor. The timely payment of these obligations is critical to maintaining employee and contractor morale and retaining the knowledgeable personnel on whom the Debtor depends, and, if these amounts are not paid, the Debtor risks losing a significant portion of its workforce at a time when it needs them most.

**B.** ***Motion to Maintain Cash Management System and Bank Account***

19. The Debtor is filing a motion seeking authority to maintain its existing bank account and books and records, and to continue using its existing checks and business forms, notwithstanding the operating guidelines of the United States Trustee. The Debtor's single bank account is integral to the customs payment processes at the center of its business, and the disruption that can result when those processes are interrupted is illustrated by the SIG litigation described above. Requiring the Debtor to close that account and open new debtor-in-possession accounts, would disrupt these established processes and impose needless expense on the estate. The Debtor has implemented safeguards to prevent the inadvertent payment of prepetition claims.

**C. *Motion to Pay Prepetition Customs Duties and Related Charges***

20. The Debtor is filing a motion seeking authority, but not direction, to pay its prepetition customs duties and related charges to U.S. Customs and Border Protection ("CBP") in the ordinary course of business. In its capacity as a customs broker, the Debtor remits customs duties, taxes, and fees on customer shipments on a continual basis, and its ability to do so timely is critical because unpaid duties can delay the release of customer cargo and may cause CBP to seek payment directly from the customer, as reflected in the SIG litigation described above. In many instances, the funds used to pay these duties are prepaid or reimbursed by customers and are held by the Debtor for remittance to CBP rather than as property of the estate, and a failure to timely remit them may expose the Debtor to monetary penalties.

**D. *Potential Additional Second Day Motions***

21. In addition to the first day relief described above, the Debtor anticipates that it may need to seek additional relief in the days and weeks following the Petition Date to further administer this Bankruptcy Case and facilitate the Debtor's reorganization. Such relief may include, among other things, motions or applications seeking:

a. Motion to Extend Time to File Schedules and Required Documents;

b. Motion to Pay Critical Vendors;

c. Application to Employ Clark Hill PLC as Bankruptcy Counsel; and

d. Application to Employ Financial Advisor.

## V. Conclusion

22. In order to minimize any loss to the value of the Debtor's assets and to maximize the benefit to the Debtor's creditors and estate, the Debtor's objective is to continue operating its business in the short term, with a view toward proposing and confirming a Subchapter V plan of reorganization. I believe that if the Court grants the relief requested in the first day motions

described above, and any additional motions that may follow, the prospect of achieving these objectives, and thus maximizing the recovery for the Debtor's estate and creditors, will be significantly enhanced.

Dated: August 25, 2026

Thomas Parish

Thomas Parish